IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOHN HEALER,                                    §
                                                §
            *Plaintiff,*                         §            SA-19-CV-01497-ESC
                                                §
vs.                                             §
                                                §
ANDREW M. SAUL, COMMISSIONER                    §
OF SOCIAL SECURITY;                             §
                                                §
            *Defendant.*                         §

## ORDER

This order concerns Plaintiff's request for review of the administrative denial of his application for a period of disability and disability insurance benefits ("DIB") under Title II. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Opening Brief [#14], Defendant's Brief in Support of the Commissioner's Decision [#15], the transcript ("Tr.") of the SSA proceedings [#10], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that substantial evidence supports the Commissioner's decision finding Plaintiff not disabled and that no reversible legal error was committed during the proceedings. The Court will therefore affirm the Commissioner's decision finding Plaintiff not disabled.

## I. Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#9, #11].

## II.  Factual Background

Plaintiff John Healer filed his application for DIB on July 14, 2017, alleging disability since January 17, 2017.  (Tr. [#10] at 211, 230–42.)  At the time of his DIB application, Plaintiff was a 55-year-old high school graduate with one year of a college education.  (Tr. 211, 234.)  Plaintiff has past relevant work as a service manager for various businesses, including a rental equipment company, mobile office rental company, and forklift dealership.  (Tr. 235.)  The related medical conditions upon which Plaintiff based his initial DIB application were reactive arthritis (formerly known as Reiter's syndrome), osteoarthritis of the knees, chronic pain syndrome, ankylosing spondylitis in multiple sites in the spine (arthritis of the spine), and other reactive arthropathies (inflammation of joints) on multiple sites.  (Tr. 233.)  Plaintiff's application for DIB was denied initially on October 12, 2017 and again upon reconsideration on April 24, 2018.  (Tr. 64, 65.)

Following the denial of his claim, Plaintiff requested an administrative hearing.  Plaintiff and his attorney Brooke Glidden attended the administrative hearing before Administrative Law Judge ("ALJ") Mark M. Swayze on December 3, 2018.  (Tr. 26–52.)  Plaintiff and vocational expert ("VE") Judith Harper provided testimony at the hearing.  (*Id.*)

The ALJ issued an unfavorable decision on March 14, 2019.  (Tr. 11–18.)  The ALJ found that Plaintiff met the insured-status requirements of the SSA and applied the five-step sequential analysis required by SSA regulations.  At step one of the analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 17, 2017, the alleged disability onset date.  (Tr. 13.)  At step two, the ALJ found Plaintiff to have the following severe impairments: ankylosing spondylitis, degenerative disc disease, degenerative joint disease, and trigger finger (a condition in which fingers remain in a bent position).  (Tr. 12–13.)  The ALJ

2

found that Plaintiff's claimed mental impairments were not severe.  (Tr. 12–13.)  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations so as to render Plaintiff presumptively disabled.  (Tr. 13.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except Plaintiff is only able to engage in occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs and is unable to engage in the climbing of ladders, ropes, or scaffolds.  (Tr. 15–17.)  The ALJ determined that Plaintiff must also avoid concentrated exposure to extreme cold temperatures, vibrations, and hazards including dangerous moving machinery and unprotected heights.  (*Id.*)  The ALJ found that Plaintiff is, however, able to engage in frequent bilateral handling and fingering.  (*Id.*)  At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a manger in the field of customer services.  (Tr. 17–18.)  Accordingly, the ALJ determined that Plaintiff was not disabled for purposes of the Act, and therefore not entitled to receive DIB.  (Tr. 18.)

Plaintiff requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on March 14, 2019.  (Tr. 1–9.)  On December 30, 2019, Plaintiff filed the instant case, seeking review of the administrative determination.

# III.  Governing Legal Standards

**A.    Standard of Review**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).   "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).   Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience.  *Martinez*, 64 F.3d at 174.   "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).   The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).   Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve.  *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*.  *See*

---

[1]  In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

4

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

**B.     Entitlement to Benefits**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant amount in the national economy—regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.  42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

**C.     Evaluation Process and Burden of Proof**

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2016).  In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit."  *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)).  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience.  20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that

is severe.  20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

"An impairment can be considered as not severe only if it is a slight abnormality having such

minimal effect on the individual that it would not be expected to interfere with the individual's

ability to work, irrespective of age, education or work experience."  *Stone*, 752 F.2d at 1101

(internal quotation omitted).  An individual who does not have a "severe impairment" will not be

found to be disabled.  20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically

equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will

be considered disabled without the consideration of other vocational factors.  20 C.F.R. §

404.1520(d).  If the claimant does not qualify under the Listings, the evaluation continues to the

fourth step.  Before commencing the fourth step, however, the ALJ assesses the claimant's

residual functional capacity ("RFC"), which is a "multidimensional description of the work-

related abilities" a claimant retains despite medical impairments.  20 C.F.R. § Pt. 404, Subpt. P,

App. 1.  *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir.

2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past

relevant work.  20 C.F.R. § 404.1520(f).  If an individual is capable of performing the work he

has done in the past, a finding of "not disabled" will be made.  *Id.*  If an individual's impairment

precludes him from performing his past relevant work, the fifth and final step evaluates the

claimant's ability—given the claimant's residual capacities, age, education, and work

experience—to do other work.  20 C.F.R. § 404.1520(g).  If a claimant's impairment precludes

him from performing any other type of work, he will be found to be disabled.  *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical–Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work.  *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV.  Analysis

Plaintiff raises one point of error in this appeal: that the ALJ erred in determining Plaintiff's RFC.  Plaintiff argues that he suffers from disabling pain resulting from rheumatoid arthritis in combination with musculoskeletal impairments and that the medical opinions in the record, particularly two medical source statements from treating medical providers, are consistent with and supportive of Plaintiff's claimed limitations.  Plaintiff complains that the ALJ failed to properly evaluate the medical opinions of record under the new Social Security regulation, 20 C.F.R. § 404.1520c, governing claims filed on or after March 27, 2017, and that these opinions, if properly analyzed, establish that Plaintiff's limitations preclude him from performing his past relevant work.  Plaintiff also argues that the ALJ failed to properly evaluate the disabling effects of his pain symptoms under 20 C.F.R. § 404.1529(c) in assessing his RFC. The Court finds both of these arguments to be without merit.

### A.    Medical Evidence of Record

The medical records in this case reflect that Plaintiff experienced the sudden onset of extreme pain in his left knee in 2016, more than a decade after receiving arthroscopic surgery on that knee.  (Tr. 321–22.)  It was suspected that the pain was caused by degenerative arthritis and a tear of the meniscus.  (*Id.*)  He received a second arthroscopic knee surgery in September 2016 with Dr. Michael Heckman, which confirmed the preoperative diagnoses.  (Tr. 329–30.)  A few weeks later, Plaintiff returned for a follow up appointment and reported some issues with the patellofemoral joint locking and popping.  (Tr. 333.)  Physical therapy was recommended, and Plaintiff saw physical therapist Steven M. Vinson for several months.  (Tr. 333–65.)  The last record from a visit with PT Vinson was on November 2, 2016, at which Plaintiff reported that he was in no acute pain and not experiencing any "catching," was ambulatory with respect to his activities of daily living, and had minimal pain.  (Tr. 365.)

Before the knee surgery, in early 2016, Plaintiff also saw a chiropractor, Dr. Regan L. Schulze, D.C., for neck pain and treatment related to diagnosed dysfunction of the cervical, thoracic, and lumbar regions of the spine.  (Tr. 584–87.)  Throughout 2017, Plaintiff received lateral epicondyle injections at Interventional Pain Management from Christopher Watson, PA-C (certified physician assistant) as treatment for complaints of back and neck pain, stiffness, tenderness, and radiating pain down his legs, shoulders, and upper extremities, including his trigger finger.  (Tr. 366–83, 520–48, 770–74.)  During these visits, Plaintiff consistently reported his pain as severe, anywhere from a five out of ten to a ten out of ten on a 0 to 10 pain scale, but reported that he was able to perform daily exercise and activities of daily living independently.  (*Id.*)  PA Watson's examination notes indicate that Plaintiff had some tenderness and decreased range of motion of the spine during this time period but no atrophy of any extremities, and had

normal gait and alignment.  (*Id.*)  Notes from July 2017 state that Plaintiff had 75 percent relief of pain in his finger after his third trigger finger injection.  (Tr. 446.)  In November 2017, it was recommended Plaintiff begin wearing a knee support brace.  (Tr. 523.)  In December 2017, Plaintiff had an MRI of his lumbar spine, which confirmed multilevel lumbar degenerative disc disease. (Tr. 881.)

Plaintiff's visits at Interventional Pain Management continued monthly into 2018, and Plaintiff continued to report pain at a rate of 7 or 8 out of 10, specifically lower and upper back pain radiating down his lower extremities and upper back and shoulders, that increased with walking or any activity, including standing.  (Tr. 725–769.)  During his 2018 appointments, Plaintiff did not receive any more injections, only medication refills, and was considered "stable" on his current medications.  (*Id.*)  Plaintiff's last visit with PA Watson was September 5, 2018, at which he still complained primarily of radiating, severe back pain that worsened with any activity.  (Tr. 725–29.)  At this last visit, however, Plaintiff did not appear to be in any acute distress and had a normal gait and symmetrical alignment, although the records documented decreased range of motion due to pain in the knee and spine.  (*Id.*)

In 2017 and throughout 2018, Plaintiff also had regular visits with Chelsea I. Clinton, M.D., a rheumatologist, for treatment of his back and joint pain.  (Tr. 614–22, 1020–24.)  In May 2017, Dr. Clinton prescribed Plaintiff with Humira, a medication used to reduce pain and swelling in arthritic individuals.  (Tr. 616, 622.)  At all of these visits, Plaintiff was able to ambulate normally during his appointments without any assistive device, and by October 2017, Plaintiff reported that the pain in his hands, wrist, and fingers had improved overall with the Humira.  (Tr. 618, 621, 618, 615.)  In February 2018, Plaintiff similarly reported that the Humira prescription was making him feel generally less stiff, that he had no joint swelling, that he had

not received injections in over six months for pain, and his trigger finger was resolved. (Tr. 614.)

In May 2018, however, Plaintiff reported increased pain after his Humira injections; the medication was discontinued; and Dr. Clinton prescribed a new medication, Cosentyx. (Tr. 1022–23.) In August 2018, Plaintiff informed Dr. Clinton that he had discontinued Cosentyx voluntarily due to the expense of the medication but that he was shopping for a new insurance plan. (Tr. 1020.) While off Humira and Cosentyx, Plaintiff again reported the return of his trigger finger and constant pain in his joints and feet and generally from his neck down. (Tr. 1020.) At this visit, Plaintiff reported he could stand for only 30 to 60 minutes at a time and could walk only 15 to 20 minutes at a time. (*Id.*) Tense and tender muscles of the shoulder and neck were observed upon examination, as well as poor range of motion of the lumbar spine. (Tr. 1020–21.) Although Plaintiff reported difficulty grasping and typing due to trigger finger in the right hand, an exam of his hands and elbows were negative for inflammation or tenderness and shoulder had full range of motion. (Tr. 1020.) Dr. Clinton noted that no replacement medication would be prescribed until Plaintiff changed insurance plans. (Tr. 1021.) Plaintiff testified at the ALJ's hearing that his COBRA coverage expired in July 2018; he did not select the right insurance; and he has been paying out of pocket for his medical expenses. (Tr. 33.)

Finally, the record contains two medical source statements, one from PA Watson, dated July 23, 2018, and one from Dr. Clinton, dated August 8, 2018, addressing Plaintiff's work-related limitations for purposes of his disability benefits application. PA Watson's statement indicates that Plaintiff has been a patient for over 10 years (since February 2008) for treatment for lower back pain. (Tr. 1051–52.) PA Watson opined that Plaintiff would be off of task at work 20 percent of the time due to his pain and would be absent from work about two days per

month.  (Tr. 1051.)  PA Watson estimated that Plaintiff can regularly lift up to 20 pounds but only occasionally lift 21 to 50 pounds and can only stand and walk for 30 minutes at a time (four hours total in a given workday) and can only sit for two hours at a time (six hours total in a given workday).  (*Id.*)  Dr. Clinton's statement similarly estimates that Plaintiff would be off task at work for 20 percent of the workday and would miss three or more days of work per month due to his constant neck, back, and hip pain, as well as flare ups of pain in the hands, elbows, and knees.  (Tr. 1053–54.)  Dr. Clinton assessed Plaintiff with the ability to carry up to 10 pounds frequently, 20 pounds occasionally, but never up to 50 pounds.  (Tr. 1053.)  Dr. Clinton opined that Plaintiff would be able to sit a maximum of two hours at a time (five hours per workday) and to walk a maximum of one hour at a time (three hours per workday).  (*Id.*)

The State agency medical consultants at the initial and reconsideration levels, Dr. Betty Santiago, M.D., and Charles K. Lee, M.D., concluded Plaintiff had the RFC to perform light work, finding he could occasionally lift and carry 20 pounds and frequently carry 10 pounds and could stand, walk, or sit (with normal breaks) for a total of approximately six hours in a given workday.  (Tr. 60–61, 81–82.)  The opinions of Dr. Santiago and Dr. Lee reached these conclusions based on the medical opinions and evidence of record, which demonstrated that Plaintiff had the ability to perform his activities of daily living independently; that Plaintiff ambulated consistently without an assistive device; and that he showed improvement with the Humira medication.  (Tr. 58–61, 83–84.)  Therefore, both doctors found Plaintiff's allegations of disabling pain to be only partially supported by the evidence of record.  (*Id.*)

Plaintiff testified at the hearing before the ALJ that he was let go from his last job because the pain medications were making him irritable and caused him to be abusive to the 20 plus employees he supervised.  (Tr. 36.)  Plaintiff further testified that he could only stand for 15

11

to 20 minutes at a time before needing to sit or use a heating pad and to manage his pain he frequently takes a double dose of pain medication.  (Tr. 37.)  According to Plaintiff, the heaviest thing he picks up is his eight-pound dog or a gallon of milk, far less than was estimated by his medical providers in their medical source statements, and his trigger finger prevents him from being able to write, beyond signing his name.  (Tr. 38–39.)  Plaintiff estimated in his testimony that he spends about five waking hours each day laying down on a recliner or a single bed devoted to his pain episodes.  (Tr. 40.)  The record also contains a statement from Plaintiff's fiancé from December 10, 2017, in which she reported that Plaintiff spends most of his day watching television; can prepare only simple meals and do only light loads of laundry; operates the riding lawn mower once a week; and does minimal shopping one to two times a week, as well as light errands.  (Tr. 285–92.)

**B.**     **The ALJ did not commit reversible error in determining Plaintiff's RFC, and substantial evidence supports his determination.**

An RFC determination is the most an individual can still do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe.  *Id.* at § 404.1545(a)(1)–(3).  The relative weight to be given the evidence contained in the record is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam).  To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).  Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference."  *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

After reviewing Plaintiff's medical records and considering Plaintiff's testimony at the hearing, the ALJ assessed Plaintiff as having the RFC to perform a reduced range of light work with the following limitations:

> occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent bilateral handling and fingering; and must avoid concentrated exposure to extreme cold temperatures, vibrations, and hazards including dangerous moving machinery and unprotected heights.

(Tr. 14.)  Governing regulations define "light work" as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).  The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday, with intermittent sitting.  *Id.*

In reaching these conclusions, the ALJ found the medical source statements of PA Watson and Dr. Clinton to be only "somewhat persuasive."  (Tr. 17.)  The ALJ found the sitting, standing, and walking limitations imposed by these two providers to be inconsistent with the medical evidence of record indicating that Plaintiff has a normal gait and that Plaintiff was not in any acute distress.  (*Id.*)  The ALJ further explained that he found Plaintiff's ability to lift and carry at the light exertional level to be consistent with the medical evidence indicating Plaintiff has no muscle atrophy.  (*Id.*)  The ALJ also concluded that the off-task and absentee limitations in the medical source statements were not supported by the treatment records.  (*Id.*)  The ALJ found the opinions of the Stage agency medical consultants at both the initial and reconsideration levels to be "highly persuasive."  (*Id.*)  The ALJ concluded that these opinions, which found that Plaintiff can perform a modified form of light work, to be more consistent with the medical evidence of record, even if the opinions conflict with aspects of the opinions of Dr. Clinton and PA Watson.  (*Id.*)  In reaching this conclusion, the ALJ noted that the State agency medical

consultants actually assessed Plaintiff with less exertional capabilities (in terms of ability to engage in weight-bearing activities) than did Dr. Clinton and PA Watson. (*Id.*)

Plaintiff contends this RFC determination is contrary to law and not supported by substantial evidence. Plaintiff argues that the ALJ failed to properly evaluate the medical evidence under the new regulation governing claims filed after March 27, 2017, 20 C.F.R. § 404.1520c, and failed to evaluate his pain symptoms under 20 C.F.R. § 404.1529(c).

     i.    <u>The ALJ did not err in evaluating Plaintiff's pain symptoms.</u>

The Fifth Circuit has explained that "[p]ain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (quoting *Selders v. Sullivan*, 914 F.2d 614, 618–19 (5th Cir. 1990)). A medical condition that can be reasonably remedied is not disabling. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). "If, however, the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Id.*

There are "external manifestations of debilitating pain," such as marked weight loss, limited range of motion, and muscular atrophy that can assist an ALJ in determining the disabling nature of pain. *Falco*, 27 F.3d at 163; *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988); *Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir. 1979). Where such objective factors are absent, an ALJ is justified in concluding that a claimant's pain is not completely disabling. *Hollis*, 837 F.2d at 1384.

The medical records before the Court document Plaintiff's long history of struggling with back pain from degenerative disc disease and joint pain associated with an arthritic condition. The Court is sympathetic that Plaintiff has suffered and continues to suffer from pain, sometimes

severe pain, but the record demonstrates that Plaintiff's pain can be and has been substantially alleviated through treatment (both injections and medication).  (*See, e.g.*, Tr. 446 (documenting 75 percent relief Plaintiff received from trigger finger injections); Tr. 614 (documenting Plaintiff's overall improvement in stiffness and lack of joint swelling and pain after several months of treatment on Humira drug prescribed by Dr. Clinton).)  The record demonstrates that Plaintiff voluntarily discontinued his prescribed pain medication due to issues with his insurance and the expense of the medication in May 2018.  (Tr. 1020.)  Although the record establishes that the treatment prescribed to manage Plaintiff's pain might be currently cost prohibitive due to Plaintiff's loss of insurance, Plaintiff has not submitted any evidence demonstrating his efforts to obtain replacement insurance, that such efforts have not been successful, or that compliance with the prescribed treatment regimen is truly financially impossible.  *Cf. Taylor*, 782 F.2d at 1298 (substantial evidence did not support ALJ's conclusion that claimant was capable of employment in period of time before obtaining surgery where claimant testified that he had no money to pay for the $18,500 surgery prescribed to remedy disabling ulcers; worker's compensation denied liability; and only other source of payment—Texas Rehabilitation Commission—was out of money, requiring claimant to wait until later date to undergo surgery).  The record here does not support a finding that Plaintiff is unable to "afford the prescribed treatment and can find no way to obtain it."  *See id.  See also Pearce v. Saul*, No. CV SA-18-CA-1131-XR, 2020 WL 290017, at *15–16 (W.D. Tex. Jan. 21, 2020) (substantial evidence supported ALJ's conclusion that alleged severity of pain and limitations caused therefrom was not credible where claimant failed to show he had attempted to obtain other insurance that might cover his procedures and medications or that the treatments were financially impossible).  Nor does the record support a finding that Plaintiff's pain is "constant, unremitting, and wholly unresponsive" to treatment.

*See Selders*, 914 F.2d at 618–19.  To the contrary, Plaintiff's records confirm that he has had significant relief from his pain symptoms at times throughout his treatment.  *See Trahan v. U.S. Comm'r Soc. Sec. Admin.*, No. CIV.A. 07-1457, 2008 WL 3833509, at *3–4 (W.D. La. July 11, 2008) (concluding that claimant's rheumatoid arthritis was accounted for in the RFC and there was not objective evidence that claimant suffered from "severe, persistent and intractable pain" that would preclude the performance of all work activity).

The record is also devoid of evidence of significant external manifestations of debilitating and disabling pain, aside from documentation of the limited range of motion in Plaintiff's spine. (Tr. 1020–21.)  In May 2018, Plaintiff's hands and elbows were negative for inflammation or tenderness (Tr. 1020); Plaintiff consistently ambulated without an assistive device throughout 2017 and 2018 during his appointments (Tr. 615, 618, 621); there is no documented evidence of muscle atrophy in any of Plaintiff's records (Tr. 366–83, 520–48, 770–74); Plaintiff consistently presented with a normal gait and alignment at all appointments (Tr. 366–83, 520–48, 770–74); and Plaintiff never appeared to be in any acute distress when meeting with his providers (Tr. 725–29).  Additionally, some of the medical records indicate that Plaintiff reported he could perform daily exercise and activities independently, while simultaneously complaining of severe pain.  (Tr. 366–83, 520–48, 770–74.)  In contrast to the aforementioned objective evidence, the subjective evidence indicates higher levels of pain.  During the same timeframe, Plaintiff stated in his function report that his activities of daily living are significantly limited due to his pain and that he spends five waking hours in a given day lying down and sometimes has difficulty putting on socks and shoes, using the toilet, cooking, and shopping due to the intensity of his pain and his limited ability to walk.  (Tr. 244–47.)

When there are conflicts between subjective complaints of pain and objective evidence, the ALJ is responsible for evaluating the claimant's credibility. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). Plaintiff argues that the ALJ erred in not specifically addressing his work history as a favorable factor in assessing his credibility, as Plaintiff has a strong work history from 1978 to 2017. In making this argument, however, Plaintiff relies predominantly on cases from other Circuits. (*See* Pl.'s Brief [#14] at 20.) These precedents are not binding on this Court, and the Fifth Circuit has not embraced a rule that an ALJ must explicitly consider work history as bolstering evidence of credibility and that a failure to do so is reversible error. Furthermore, "[d]istrict courts in the circuit, including in this District, have rejected imposing such a bright-line requirement on an ALJ." *Wetzel v. Berryhill*, No. 5-17-CV-00364-RBF, 2018 WL 4664139, at *9 (W.D. Tex. Sept. 28, 2018).

Moreover, the Fifth Circuit has long rejected embracing a "rigid approach" that requires "formalistic rules" of articulation by the finder of fact. *See Falco*, 27 F.3d at 163–64. Although this Court agrees that the ALJ could have and perhaps should have taken into greater consideration Plaintiff's decades-long work history in assessing Plaintiff's credibility (and that Plaintiff's work history supports Plaintiff's truthfulness in alleging the severity of his pain symptoms), this Court may not substitute its own judgment for that of the ALJ's. Nor can the Court reweigh the evidence, even if the record demonstrates that a different ALJ might have weighed the evidence differently. *Newton*, 209 F.3d at 452. In summary, the ALJ reviewed the objective medical evidence of record and found it to be inconsistent with Plaintiff's subjective complaints. (Tr. 16.) He was entitled to do so.

Finally, the fact that the ALJ did not specifically discuss each of the factors set forth in 20 C.F.R. § 404.1529(c)(3) for evaluating pain is not reversible error. Section 404.1529(c)(3)

describes the type of evidence regarding pain symptoms that will be considered in determining disability and lists specific factors to be considered, such as daily activities, location and intensity of pain, treatment, and medication.  Neither this regulation nor the case law requires that an ALJ explicitly discuss each of these regulatory factors, so long as the administrative decision makes clear that the factors were in fact considered.  *See Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001) (finding that the context of the ALJ's decision reflects adequate consideration of use of pain medication, one of the regulatory factors).  Here, the ALJ cited the relevant regulation and discussed evidence relating to the factors set forth in Section 404.1529(c)(3), such as Plaintiff's ability to engage in certain daily activities, the improvement of Plaintiff's pain symptoms with treatment and medication, and the location and persistence of tenderness and decreased range of motion in Plaintiff upon examination.  The ALJ did not err in evaluating Plaintiff's symptoms of pain.

ii.      The ALJ did not err in weighing the various medical opinions of record.

The Social Security Administration recently promulgated a new rule regarding RFC determinations to govern all claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c. Because Plaintiff filed his claim on July 14, 2017, the new rule applies.  This rule addresses how the Commissioner is to consider and evaluate medical opinions and prior administrative medical filings in evaluating a claimant's residual functional capacity and eliminated the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings.  *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).

The new rule states that the Commissioner is no longer required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior

administrative medical finding. *Id.* at § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* at § 404.1520c(b)(2). The other factors are treatment relationship with the claimant, specialization, and other factors, such as familiarity with other evidence in the claim. *Id.* at § 404.1520c(c). The Commissioner must articulate how persuasive he finds each of the opinions in the record. *Id.* at § 404.1520c(b). When the Commissioner finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the Commissioner must articulate how he "considered the other most persuasive factors" (treatment relationship, specialization, and other factors). *Id.* at § 404.1520c(b)(3).

Plaintiff contends the ALJ violated this last directive because Plaintiff believes the opinions of Dr. Clinton and PA Watson, the providers authoring the medical source statements in the record, were at least in equipoise with the medical opinions of the reviewing State agency medical consultants, and, therefore, the ALJ was required to "break the tie" by specifically articulating his consideration of the other factors in the regulation. Plaintiff argues that no reasonable ALJ could find the non-examining medical consultants' opinions to be more supported by the record than those of Plaintiff's treating sources.

The ALJ did not err in weighing the medical opinions of record under the new regulation governing Plaintiff's claim. Under the regulation, the ALJ may, but is not required to, explain his consideration of the additional factors beyond "supportability" and "consistency," unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not

identical.  *Id.*  Plaintiff misconstrues the rule when he argues that the ALJ was required to "break the tie" between the opinions of Dr. Clinton and PA Watson and the State agency medical consultants, when the ALJ himself did not find these opinions to be in equipoise and substantial evidence supports the ALJ's determination.

In determining Plaintiff's RFC, the ALJ applied the new Section 404.1520c and discussed each of the medical opinions in the record and explained that he is no longer required to "defer or give any specific evidentiary weight, including controlling weight," to any prior administrative finding or medical opinion under the new rule.  (Tr. 16–17.)  In doing so, the ALJ explained how he determined each opinion's persuasiveness, discussing the most important factors of consistency and supportability, and concluded that the opinions of the State agency medical consultants were more consistent with and supported by the record.  Specifically, the ALJ concluded that PA Watson's and Dr. Clinton's opinions imposing significant stand and walk, off-task, and absentee limitations to be "inconsistent with the medical evidence of record indicating that the claimant has a normal gait"; inconsistent with the providers' own treatment records consistently noting Plaintiff to be in no distress; and unsupported by the "frequency of office visits" as demonstrated in the record.  (Tr. 17.)  Furthermore, the ALJ found the lifting limitations imposed by PA Watson and Dr. Clinton to be "consistent with the ability to perform light work."  (*Id.*)

As to the opinions of the State agency medical consultants, Dr. Santiago and Dr. Lee, the ALJ found these opinions highly persuasive, specifically their opinion that Plaintiff is able to perform modified light work to be more consistent with the treating source opinions.  (*Id.*)  The new regulations governing Plaintiff's claim specifically state that ALJs are to consider prior administrative medical findings and medical evidence from State agency medical consultants

because these consultants "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1). The opinions of Dr. Santiago and Dr. Lee emphasized that the medical opinions of record demonstrated that Plaintiff had the ability to perform his activities of daily living independently and ambulated without an assistive device and that he showed improvement with the Humira medication. (Tr. 58–61, 83–84.) Therefore, they both found Plaintiff's subjective descriptions of his pain to be only partially supported by the evidence of record. (*Id.*) Although the ALJ's discussion of the medical opinions was brief, for each opinion, he nonetheless explained whether he found the opinion to be supported by and consistent with the medical and other objective evidence and explained whether he ultimately found the opinion to be persuasive. (Tr. 16–17.) The ALJ was not required to articulate his consideration of the other factors after finding the opinions of the State agency medical consultants to be more supported by and more consistent with the medical records and other objective evidence than the medical source statements of PA Watson and Dr. Clinton.

Moreover, for the same reasons stated with respect to the ALJ's assessment of Plaintiff's pain, substantial evidence supports the ALJ's ultimate RFC determination that Plaintiff is capable of doing light work (and that Dr. Santiago and Dr. Lee's opinions to that effect were persuasive). Plaintiff exhibited no evidence of muscle atrophy at any of his medical appointments in the record; relayed to his medical providers that he was able to perform his activities of daily living independently; received relief from the severity of his joint stiffness and pain symptoms with injections and medication; consistently walked without an assistive device; had a normal gait and symmetrical alignment; lacked inflammation and tenderness in his joints upon examination; and was never observed to be in acute distress. (Tr. 366–83, 446, 520–48, 614–21, 725–29, 770–74, 1020.) Because there is substantial evidence to support the ALJ's RFC

determination, and the ALJ did not commit any reversible legal error in making his RFC determination, the Commissioner's decision that Plaintiff is not disabled should be affirmed.

### V.  Conclusion

Based on the foregoing, the Court finds that no reversible error was committed during these proceedings and substantial evidence supports the Commissioner's finding that Plaintiff is not disabled.  Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 3rd day of December, 2020.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE